## BAIL and WIFE v. McCULLOUGH et al.

Court of Common Pleas. New Castle. February, 1797 (Adjourned).

*Bayard's Notebook, 176.*

The case was argued by *Vandyke* and *Bayard* for plaintiffs, and by *Read* and *Rodney* for the defendant.

For the plaintiffs it was contended that the Orphans' Court was a court of limited jurisdiction and power and that any act not within that jurisdiction and power was void. That with respect to the distribution of lands the court had no discretion; they were bound to adhere to the rules prescribed by the intestate laws, and that any departure from those rules could impose no obligation. It never was understood that the power of the court reached further than the express provision of the laws. It was not therefore considered that the power given in the original Act [1 Del.Laws 291], in case the lands would not divide, to award the whole to the eldest son, extended to the case of brothers, though the same Act directed a distribution among brothers to be made. A new law was thought necessary to put the case of brothers upon the same footing with that of sons, which was accordingly made, [1] Del.Laws [418].[1] So in the case of an assignee of an heir, a power to proceed upon the petition was not supposed to exist till given expressly by law. [2] Del.Laws [418].

These cases manifested by the practice of the court and the sense of the legislature that no authority was supposed to exist but what was expressly given. It was clear the laws gave no power upon the petition of the husband and wife for division of the wife's land to award the whole land to the husband in his own right. The only power on the subject was in certain cases to award the lands to the daughters. There was no doubt in case the sons were under age or there were no sons the lands might be awarded in the order of seniority to the daughters, but this power fell far short of a power of awarding the lands to the husband of a daughter. Such an award, if effectual, operated as a conveyance of the land and shifted the very right of property from the

---

[1] Footnote by Bayard, "And upon the same principle, where the heir first entitled to acceptance was under age, the Court did not conceive that they could pass him by and offer the land to an heir of age till a law was passed for the pu pose. [1] Del.Laws [538]."

wife to the husband. That the same power, or any analogous, was not given by the intestate laws or any law to the Orphans' Court or to any other court. That this was against the essential principle of judicial authority, which was designed to carry rights into effect and not to transfer them without consent and without consideration or equivalent from one person to another. That if the award of the Orphans' Court were in the present case valid, the husband by their act acquired a right of conveying the wife's land without her consent. A consequence of a magnitude perhaps greater also followed. The course of descent or inheritance of the whole property was changed, which would now be inherited in case of no issue by the heirs of the husband to the exclusion of those of the wife. That a power producing effects so important should appear to have been expressly created or clearly to exist. That such a power was not given to the court by the Act of Assembly, nor was there any principle to support it, and of consequence the exercise of it in the present case was absolutely void. The acts of a court not having power are void, as if the Court of Common Bench hold plea in an appeal of death, robbery, etc., *Case of the Marshalsea,* 10 Co. 76. Commission of bankruptcy issued against one not liable to become a bankrupt; proceedings void, 2 Wils. 384–386. Commissioners of Excise adjudge low wines strong waters; it is an excess of authority and the proceedings in consequence *coram non judice,* Har. 483, *Terry v. Huntington.* To the same effect were cited 5 Bac.Abr. 334 pl. [9], 3 Bl.Comm. 85–86 and the case of *Bishop v. Bishop* in Supreme Court determined by Read, C. J. in November Term, 1795, *ante 125.*

It was in the second place insisted that if the award was not good by the Act of Assembly, it could not be supported by any practice or custom. It was a maxim *quod ab initio non valet tractu temporis non convalescit,* Doug. Custom cannot prevail against Act of Parliament. By 36 Edw. III, c. 15, all entries are to be in Latin, and a custom to make them in English held not good, Cro.Eliz. 85. To the same effect are 1 Bl.Comm. 76, Co. Litt. 113a, 115a, 2 Wood.Lect. 54, Cro.Eliz. 689. Usage against law not good, though it regards the practice of a court, 2 Salk. 659. Upon the same head were cited 3 Term 271, [1]. Dall. 178, 3 Term 728, 3 Burr. 1767, Har. 41, 4 Burr. 2545. They alleged that the few precedents of similar awards which had been shown on the records of the court could not be called a practice nor be allowed to establish a custom. That those cases were manifestly erroneous and ought to be corrected rather than followed as an authority. Upon the grounds stated, they conceived the award

of the lands in dispute to defendant was void, and that the plaintiffs' right to recover existed as if no such award had been made.

It was argued upon the other side by *Read* and *Rodney* for defendant that the whole proceedings in the Orphans' Court being considered, it was not to be taken that the lands were exclusively vested in the defendant, but in fact were vested *prout lex postulat.* That the petition was in the name of the husband and wife and the right of the wife fully stated; and though the award was formally to the husband, yet it must take effect according to the rights of the parties. That if in fact the legal estate passed by the award to McCullough, yet he may be considered a trustee for the wife; and if the right of the case required it, a court of chancery would decree a conveyance. But they contended the award was strictly regular, and the intent of the intestate law could not otherwise be executed. The defendant's wife, if she were sole, would be entitled to the acceptance of the land. This right is personal and upon marriage is given to the husband. The coverture disables the wife to accept or to give the security required by the law, and if the husband cannot accept, the wife utterly loses her right. If a husband and wife enter into a recognizance, it is void as to the wife, 10 Co. 43a. The case may be likened to a right of entry upon condition broken. In such case the right of entry is given to the husband. And if the wife's estate have a condition annexed to it, if the condition be not performed by the husband, the wife is bound, 5 Com.Dig. 95. The election therefore belonged to the husband, for which reason, and because the security must be given by him, the lands were properly awarded to him.

They contended, however, that admitting the proceeding erroneous, yet that they were amendable, and that in fact a petition was depending before the Orphans' Court for an amendment. That court stands on the footing of the Supreme Court and Common Pleas and has the same power to make amendments. The error is *inter apices juris,* the mere error of the clerk and of consequence amendable, and that if amendable, the court would consider the amendment as made. A judgment may be amended, 6 Term 1. In partition against two defendants, one confessed judgment, and yet the nisi prius roll contained the issue joined by both, and the jury were summoned accordingly, and on motion it was held that the error was not fatal but amendable as an error of the clerk. Amendments are allowed after error brought. There are errors amendable by the Statute of Jeofails, but the amendments are seldom made, the court considering them made. The judges of this Court, constituting the Orphans' Court, may

well consider that done which they know they would do. It was also said the proceedings were not void but voidable and therefore binding till avoided.

But it was chiefly insisted that the award in this case was conformable to all the awards in similar cases which had been made since the intestate law was first passed. The Act of Assembly passed in the year 1750. And from 1760 there were many similar awards. (They had from the records of the Orphans' Court of New Castle County eleven cases of like awards, the first the 26th July, 1760, the last, 15th January, 1793. In three of these cases, however, it was recited that the husband was assignee of the eldest son.) Such a series of precedents, they contended, established a practice, and such an exposition of the law as at this day could not be resisted. *Communis error facit jus,* and where there are one hundred precedents it will be good, Noy Max. 10. Plaintiff sued out an *elegit,* which had been awarded within but not taken out till after the year, and no *scire facias,* nor any count of *vicecomes non misit breve;* this was held erroneous, but being the ancient practice allowed to be good, Carth. 283. What is parcel of a manor by ancient reputation will pass on that ground, 1 Sid. 190. Receipt of the mayor allowed to bind the corporation because there were one hundred precedents for it, Jenk. 162. Common recovery not now allowed to be drawn into question, because *communis error facit jus,* Jenk. 260. Inquisition held good because of precedents, Hob. 83. In Pennsylvania it was held, solely on the ground of usage, that the conveyance of a *feme covert* examined privately by a justice of the peace was good, [1] Dall. 11; and in the case of *Lloyd v. Taylor,* [1] Dall. 17, the court went a step further and held such a conveyance good without an examination, upon the express principle that *communis error facit jus.* The same maxim is established in Comb. 320 and 1 Salk. 33. 2 Eq.Cas.Abr. 200, pl. 7 is a strong case for defendant. It is there laid down that a series of precedents against an Act of Parliament will make the law, though they pass *sub silentio.* In And. 49 and 2 Mod. 233 the principle is affirmed.

The principle now contended for is aided by the principle in 2 Co.Inst. 136: *Contemporanea expositio est fortissima in lege.* A construction given to an Act of Assembly immediately after it passed, though erroneous, ought not to be altered at a distant period of time. [1] Dall. 136. The same principle is contained in the same book, [page] 175. And the reason is, because much property may depend upon the construction. Since the date of the Act of Assembly, an award under the same circumstances different from the present has not been shown. Upon the grounds

urged, they conceived the judgment of the Court upon the special verdict ought to be for the defendant.

*Curia advisare vult.*

At [——] Term 179[–] [2] the Court gave judgment in favor of the defendant.